O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: CARTHAGE TRUST | Case No. 2:12-cv-10861-ODW(PJWx) |
| | **ORDER GRANTING RESPONDENTS' MOTION TO DISMISS FOR IMPROPER SERVICE AND PERSONAL JURISDICTION AND DENYING AS MOOT RESPONDENTS' MOTION TO DISMISS FOR IMPROPER VENUE; ORDER TO SHOW CAUSE RE SERVICE OF PROCESS** |

## I.    INTRODUCTION

While Petitioner Schuyler Moore recounts a sordid tale of wayward fiduciaries and international fraudsters supposedly absconding with millions of dollars in funds from a Swiss bank account, he skips over one of the most fundamental elements of the American judicial system: personal jurisdiction.  Moore attempts to reach two foreign defendants, one a British Virgin Islands company and the other a British national and Swiss resident, with a Petition originally filed in California state court.  But given the dearth of connections Respondents have to California, the "long arm of the law" is simply too short to reach them.  The Court therefore **GRANTS** Respondents' Motion to Dismiss for Improper Service and Lack of Personal Jurisdiction and **DENIES AS MOOT** Respondents' Motion to Dismiss for Improper Venue.[1]

---

[1] Having carefully considered the papers filed in support of and in opposition to Respondents' Motion, the Court deems the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; L.R. 7-15.

## II.   FACTUAL BACKGROUND

The Carthage Trust was formed on December 7, 2005, and the Carthage Trust Agreement named Petitioner Moore as the initial trustee.  (Moore Decl. ¶ 7.)  The Trust Agreement provides that the trust is governed and administered exclusively under California law and that any disputes are to be litigated in the federal or state courts sitting in Los Angeles, California.  (Moore Decl. Ex. B, at 3.)

Under a purported December 30, 2005 Nomineeship Agreement, Respondent Grasselle S.A. became a "sub-trustee" of the Carthage Trust.  (Moore Decl. Ex. D.)  Grasselle was allegedly obligated to hold a Swiss Corner Banca account for the benefit of Paul Hogan, the current beneficiary of the Carthage Trust.  (*Id.*)  The bank account was previously held in bare trust for the trustee of another trust, the Quatre Saisons Trust ("QS Trust").  (FAP ¶ 14.)  Grasselle is wholly owned by the QS Trustee, and the QS Trustee is in turn owned by Respondent Strachans.  (*Id.* at ¶ 15.)  Philip De Figueiredo and Respondent Philip Egglishaw are the principals of Strachans.  (*Id.*)

Grasselle is an entity incorporated under the laws of the British Virgin Islands and has no offices, employees, registered agent, or operations in California.  (Ferro Decl. ¶¶ 3, 6; Mot. Ex. C.)  The company has also never litigated or marketed its services in California.  (Ferro Decl. ¶ 6.)

Egglishaw is a British national and Swiss resident.  (Egglishaw Decl. ¶ 2.)  He has not visited California since April 22, 2005, and has never been to California for anything related to the QS or Carthage Trusts.  (*Id.* at ¶ 3.)  Egglishaw similarly never advertised, solicited business, employed anyone, or litigated in California prior to this Petition.  (*Id.* at ¶ 4.)

On November 8, 2012, Moore filed a First Amended Petition against Egglishaw, Grasselle, and Strachans in the Los Angeles Superior Court Probate Department, alleging eight claims against Respondent Grasselle and one claim against Respondents Egglishaw and Strachans: (1) breach of fiduciary duty; (2) rescission

based on breach of fiduciary duty; (3) aiding and abetting breach of fiduciary duty (the only claim alleged against Egglishaw and Strachans); (4) accounting; (5) conversion; (6) possession of personal property; (7) wrongful taking; (8) removal of Grasselle as sub-trustee; and (9) declaratory relief.  (ECF No. 1, at Ex. B.)

On December 13, 2012, Moore attempted to serve the First Amended Petition on Grasselle by mailing it and the Probate Case Cover Sheet to P.O. Box 964, Road Town, Tortola VG1110/British Virgin Islands with return receipt requested.  (Mot. Ex. C.)  But since March 7, 2007, both Grasselle's registered agent, Equity Trust (BVI) Limited, and Grasselle's registered office have been located at P.O. Box 438.  (*Id.*; Ferro Decl. ¶ 4.)  Grasselle's current registered agent never received any notice regarding this case.  (Ferro Decl. ¶ 7.)  The incorrect address was supposedly that of Grasselle's former registered agent.  (Merryman Decl. ¶ 4.)

Moore attempted to serve Egglishaw via the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("Hague Service Convention").  (Lucas Decl. ¶ 4.)  On December 27, 2012, Egglishaw received the First Amended Petition, Probate Case Cover Sheet, and another document from the Swiss Government.  (Egglishaw Decl. ¶ 5.)

Grasselle and Egglishaw, appearing specially, removed the First Amended Petition to this Court on diversity grounds on December 20, 2012.

On January 7, 2013, Grasselle and Egglishaw filed a Motion to Quash Service of Process under Federal Rules 12(b)(4) and (5) and Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue under Rules 12(b)(2) and (3).[2]  (ECF No. 14.)  Moore filed his opposition on January 14, 2013 (ECF No. 23), and Respondents replied on January 18, 2013.  (ECF No. 24.)  That Motion is now before the Court for decision.

/ / /

---

[2] Respondent Strachans did not join in the Motion, nor has it filed a Motion of its own.  But there is also no indication that Moore ever attempted to serve Strachans either.

### III.   LEGAL STANDARD

A federal court lacks personal jurisdiction over a defendant if that defendant has not been served according to federal law.   *Travelers Cas. & Sur. Co. of Am. v. Brenneke*, 551 F.3d 1132, 1135 (9th Cir. 2009).   A defendant may challenge the method of service attempted by the plaintiff under Federal Rule of Civil Procedure 12(b)(5).

A defendant may also move to dismiss a case for lack of personal jurisdiction under Rule 12(b)(2).   The plaintiff (or petitioner in this case) bears the burden of demonstrating that jurisdiction exists.   *Love v. Assoc. Newspapers Ltd.*, 611 F.3d 601, 608 (9th Cir. 2010).

District courts have the power to exercise personal jurisdiction to the extent of the law of the state in which they sit.   Fed. R. Civ. P. 4(k)(1)(A); *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1988).   California's long-arm jurisdictional statute is coextensive with federal due-process requirements.   Cal. Civ. Proc. Code § 410.10; *Roth v. Garcia Marquez,* 942 F.2d 617, 620 (9th Cir. 1991).

For a court to exercise personal jurisdiction over a nonresident defendant under federal law, the defendant must have sufficient "minimum contacts" with the forum state so that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945).   Using the "minimum contacts" analysis, a court may obtain either general jurisdiction or specific jurisdiction over a non-resident defendant.   *Doe v. Unocal Corp.*, 248 F.3d 915, 923 (9th Cir. 2001).   If the defendant's activities are insufficient to subject him to general jurisdiction, then the court looks to the nature and quality of the defendant's contacts in relation to the cause of action to determine whether specific jurisdiction exists. *Data Disc, Inc. v. Sys. Tech. Assoc. Inc.*, 557 F.2d 1280, 1287 (9th Cir. 1977).

Aside from the personal-jurisdiction requirement, a civil action must also be brought in the appropriate venue.   The case may be brought in:

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

Rule 12(b)(3) empowers a defendant to raise improper venue as a basis for dismissal of the action.

## IV.    DISCUSSION

Grasselle and Egglishaw move to dismiss the First Amended Petition on three different grounds: (1) insufficient service of process under both the state and federal law; (2) lack of general or specific personal jurisdiction; and (3) improper venue.  In opposition, Moore claims that both Respondents received adequate notice, that the Court has specific jurisdiction over both of them due to the purported agreements, and that venue is proper in the Central District of California because of the Trust Agreement's forum-selection clause.  The Court considers each of these grounds and the parties' respective arguments in turn.

### A.    Sufficiency of Notice

Grasselle and Egglishaw both move to dismiss the First Amended Petition for improper service of process, arguing that Moore never properly served them either in accordance with California state law prior to removal or under federal law post-removal.  Moore disagrees, asserting that both Respondents ultimately received notice and should be held to answer to the Petition.

The California Code of Civil Procedure generally details the content of the service one must receive, and the manner by which that service must be effected,

when an action is brought against that person in state court.  Cal. Civ. Proc. Code § 413.10 *et seq*.  Additionally, the California Probate Code incorporates the Code of Civil Procedure "[e]xcept to the extent that [the Probate Code] provides applicable rules."  Cal. Prob. Code § 1000.

Probate Code section 17200 empowers a trustee or beneficiary to file a petition with a probate court—as Petitioner did here—to adjudicate, among others, any issues regarding the internal affairs of a trust.[3]  Section 17203 addresses who must receive notice of the petition and how the notice must be served.  Subsection (a) provides that "[a]t least 30 days before the time set for the hearing on the petition, the petitioner shall cause notice of hearing to be mailed to," among others, all trustees and beneficiaries.

Subsection (b), however, requires that the petitioner serve "notice of the hearing and a copy of the petition" to "any person, other than a trustee or beneficiary, whose right, title, or interest would be affected by the petition and who does not receive notice pursuant to subdivision (a)."  Cal. Probate Code § 17203(b).  That subsection further dictates that the petitioner must serve the notice and copy of the petition "in the manner provided in Chapter 4 (commencing with Section 413.10) of Title 5 of Part 2 of the Code of Civil Procedure."  *Id.*

i.   *Notice to Grasselle*

Grasselle argues that any supposed notice it received was untimely because Moore mailed the First Amended Petition and Probate Case Cover Sheet on December 13, 2012.  Grasselle points to California Code of Civil Procedure section 415.40 for the proposition that service by mail to an out-of-state defendant is only effective 10 days after mailing.  Since this case was removed before than 10-day period lapsed, Grasselle contends service was never effected at the state level.

---

[3] Moore filed the First Amended Petition in the Los Angeles Superior Court Probate Department, invoking the Probate Court's exclusive jurisdiction over the internal affairs of trusts under California Probate Code section 17000(a).  (FAP ¶ 10.)

1  Grasselle also asserts that since Moore never sent it a federal summons following
2  removal, service was likewise ineffective under federal law.

3      Moore counters that Grasselle's "misguided technical arguments" are simply a
4  ruse to cover up the fact that Grasselle ultimately did receive notice of the Petition.
5  Though he fails to cite any law, Moore also argues that no summons is required for
6  California probate matters, so it is irrelevant whether one was served.

7      Because Petitioner claims that Grasselle is a "sub-trustee" of the Carthage
8  Trust, subsection (a) applies to the manner and extent of the notice it should have
9  received at the state-court level.  *See* Cal. Probate Code § 17203(a)(1).  Petitioner was
10 thus only obligated to mail Grasselle notice of the hearing.  According to Petitioner's
11 purported state-level "Proof of Service of Summons," he mailed a copy of the First
12 Amended Petition and the Probate Case Cover Sheet to P.O. Box 964, Road Town,
13 Tortola VG1110/British Virgin Islands with return receipt requested.  (Mot. Ex. C.)

14     Under California law, "strict compliance [with service requirements] is not
15 required."  *Dill v. Berquist Constr. Co.*, 24 Cal. App. 4th 1426, 1436–37 (1994).
16 Rather, "substantial compliance is sufficient."  *Id.*  But there is no evidence before the
17 Court that Grasselle really did receive the notice required by section 17203(a).  After
18 all, the purported notice was sent to the wrong address, namely that of Grasselle's
19 former registered agent.  To date, Moore has not filed proof of service on Grasselle.
20 Imputing notice to Grasselle based on the evidence before the Court would require
21 baseless assumptions, something wholly inappropriate for a judicial system predicated
22 upon truthful, authenticated evidence.

23     Grasselle obviously received sufficient notice to enable it to appear before the
24 Court for the purpose of filing the Motion to Dismiss.[4]  But it would be
25 counterintuitive for the Court to impute notice to Grasselle and Egglishaw based

26
27 [4] The Federal Rules of Civil Procedure abolished the need for special appearances, because a party
does not waive lack of personal jurisdiction so long as the issue is raised under Rule 12(b).  *Republic*
28 *Int'l Corp. v. Amco Engineers, Inc.*, 516 F.2d 161, 165 (9th Cir. 1975).  Respondents appropriately
asserted the issue by filing this Motion.

1   solely on the filing of this Motion when they were required to bring the Motion in
2   order to assert the insufficient-notice defense.   The Court accordingly finds that
3   Grasselle did not receive the notice required by California Probate Code section
4   17203(a).

5   Moore's purported notice likewise falters under federal law.   As Grasselle
6   points out, 28 U.S.C. § 1448 governs service in removed actions that was not effected
7   properly or at all at the state level.   The section provides that, after removal, "such
8   process or service may be completed or new process issued in the same manner as in
9   cases originally filed in such district court."   28 U.S.C. § 1448.   Federal Rule of Civil
10  Procedure 4 governs service in federal court.   The Rule requires, among other things,
11  that a summons be served on the defendant.   Fed. R. Civ. P. 4(c)(1).

12  Moore never filed proof of service post-removal, and, by that argument, never
13  proved he served a summons on Grasselle.   The Court therefore finds that Moore
14  failed to properly serve Grasselle either before or after this Petition was removed and
15  **GRANTS** Grasselle's Motion on this ground.

16      *ii.   Notice to Egglishaw*

17  Egglishaw argues that Moore did not properly serve him, because Egglishaw
18  received the purported service on December 27, 2012, seven days after this case was
19  removed to federal court.   Like Grasselle, Egglishaw contends that under California
20  Code of Civil Procedure section 415.40, Moore's service on him was untimely.
21  Additionally, Egglishaw contends that Moore never properly served him post-
22  removal, because Egglishaw likewise never received a federal summons.

23  In opposition, Moore clings to his substance-over-form argument, namely, that
24  the Court should deem service was properly effected simply because Egglishaw
25  ultimately received the First Amended Petition and Probate Case Cover Sheet.

26  Egglishaw's classification under section 17203 entails a more complex analysis
27  than that of Grasselle.   Under subsection (a), he could only possibly qualify as a
28  trustee.   It appears from the First Amended Complaint that Egglishaw is a principal of

Strachans, which owns the QS Trustee.  (FAP ¶ 15.)  The QS Trustee in turn owns Grasselle (*id.*), the entity that holds the Corner Banca account in bare trust for the QS Trustee.  (*Id.* at ¶ 15.)  The QS Trustee purportedly "appointed" the trust property, that is, the Swiss bank account, to the Carthage Trustee on December 30, 2005, under the Instrument of Appointment.  (*Id.* at ¶ 18.)  If this document was indeed validly executed, that would mean that Grasselle then held the bank account for the benefit of Paul Hogan, the current Carthage Trust beneficiary.  Moore and Grasselle would then be co-trustees of the Carthage Trust.

At best, Egglishaw (through several corporate veils) could be categorized as a trustee of the Corner Banca account.  But the connection is tenuous.  Rather, he seems more appropriately labeled (if at all) as a person "whose right, title, or interest would be affected by the petition."  Cal. Prob. Code § 17203(b).  He was thus entitled to notice of the hearing and a copy of the First Amended Petition.  *Id.*

Egglishaw acknowledged in his Declaration that he received a copy of the First Amended Petition and the Probate Case Cover Sheet.  (Egglishaw Decl. ¶ 5; *see also* Mot. Ex. B.)  The First Amended Petition is stamped with the February 15, 2013 hearing date. (Mot. Ex. B.)  Given the totality of the information Egglishaw received, the Court finds that Moore complied with the substantive-notice requirement of section 17203(b).

The procedural question is another matter.  Per Probate Code section 17203(b), the Code of Civil Procedure governs the procedure for serving one other than a trustee or beneficiary.  Because Egglishaw is located outside of California, the Code's out-of-state service requirements apply.  Section 413.10(c) acknowledges that a defendant may be served through the Hague Service Convention, which is exactly what Moore attempted to do here.

But since Egglishaw received service seven days after this Petition was removed to federal court, this is a situation where "service [was] not . . . perfected / / /

1   prior to removal." 28 U.S.C. § 1448.  Moore was accordingly obligated to comply

2   with Rule 4, which, among other things, requires a plaintiff to serve a summons.

3         Since Egglishaw, like Grasselle, never received a federal summons, Moore did

4   not comply with federal-service requirements following removal.  The Court therefore

5   **GRANTS** Egglishaw's Motion on this ground.

6   **B.  Personal Jurisdiction**

7         To establish personal jurisdiction, the Due Process Clauses of the Fifth and

8   Fourteenth Amendments require that a defendant "have certain minimum contacts

9   with [the forum state] such that the maintenance of the suit does not offend traditional

10   notions of fair play and substantial justice."  *Int'l Shoe*, 326 U.S. at 316 (internal

11   quotation marks omitted).  An out-of-state defendant must have "fair warning" that its

12   activities in the forum state will subject it to personal jurisdiction.  *Shaffer v. Heitner*,

13   433 U.S. 186, 218 (1977) (Stevens, J., concurring).  This fair warning can be

14   established when the defendant has "purposefully directed his activities at residents of

15   the forum, and the litigation results from alleged injuries that arise out of or relate to

16   those activities."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)

17   (citations omitted) (internal quotation marks omitted).

18         Personal jurisdiction falls into two categories: general or specific jurisdiction.

19   *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008).  A court has general

20   jurisdiction when the defendant engages in "continuous and systematic general

21   business contacts . . . that approximate physical presence in the forum state."

22   *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004)

23   (internal quotations marks omitted).  Moore does not address general jurisdiction in

24   his Opposition, and probably for good reason.  The evidence before the Court fails to

25   approach any level near "continuous and systematic general business contacts" by

26   either Grasselle or Egglishaw.

27   / / /

28   / / /

The Ninth Circuit has expounded a three-part test for establishing specific personal jurisdiction: (1) the defendant must purposefully avail himself of the benefits and protections of the forum state; (2) the claim must arise out of, or be related to, the defendant's forum-based activity; and (3) exercise of jurisdiction must comport with fair play and substantial justice. *Schwarzenegger*, 374 F.3d at 802.

   *i.*  *Personal Jurisdiction over Grasselle*

Grasselle argues that it has not purposefully availed itself of the benefits and protections of California law, because it conducts no continuous business, has no registered agent, does not litigate, and does not advertise in California. Grasselle's only contacts with California, it argues, are the purported Instrument of Appointment and Nomineeship Agreement with the Carthage Trust. The Nomineeship Agreement does not arise under California law, because its choice-of-law provision selects "the laws of England Wales" as the governing law. (Moore Decl. Ex. D, at 4.) Grasselle further contends that it performed its duties under the agreements entirely abroad, as it sent statements and other correspondence via email from Switzerland or the British Virgin Islands. Lastly, Grasselle asserts that it would be highly burdensome to litigate in California when the majority of witnesses and documentary evidence is located outside the United States.

Moore contends, however, that Grasselle did avail itself of California law when it entered into a contract with a California trust administered by a California trustee for the benefit of a California beneficiary. Moore also argues that Grasselle carried out the Nomineeship Agreement in California by sending accounting ledgers and other documents to Moore in California. Finally, he asserts that California is the most efficient forum for resolution of this case because the trust is based here and both Respondents' counsel are here.

Grasselle correctly points out that this case is analogous to the Ninth Circuit's opinion in *McGlinchy v. Shell Chemical Co.*, 845 F.2d 802 (9th Cir. 1988). There, the court upheld the district court's dismissal of a case for lack of personal jurisdiction

against an English company that negotiated a contract with a California resident.  *Id.* at 816.  The court identified four factors it found persuasive: (1) the "substance of the relationship" was formed abroad because the contract, though signed in California, was negotiated in England; (2) the contract made no reference to California, such as being a forum for disputes; (3) no agents of the defendant performed any part of the contract in California; and (4) unilateral activity by the plaintiff in California was insufficient to establish "minimum contacts" on the part of the defendant.  *Id.* at 816–17.

Those factors are similarly present here.  First, the substance of the Instrument of Appointment and Nomineeship Agreement, if they were ever properly executed, provided that Grasselle, a British Virgin Islands company, was to hold a Swiss bank account in trust—thousands of miles away from California.  And this case even goes one step further than *McGlinchy*: unlike the contract in *McGlinchy*, the agreements at issue here were never signed by Grasselle, if at all, in California.  *See id.* at 816.

Second, the agreements make few references to California.  Rather, the Nomineeship Agreement provides that it "shall be governed by the laws of England and Wales and all disputes arising out of or in connection with [it] shall be subject to the exclusive jurisdiction of the English courts and the parties agree that England is clearly the most suitable forum for the trial of such issues."  (Moore Decl. Ex. D.)  Also, the Instrument of Appointment, to the extent applicable to Grasselle, invokes "the laws of the channel island of Jersey"—again, not California.  (*Id.* at Ex. C.)  California simply plays little part in these two agreements.

The original Carthage Trust Agreement provides that any disputes arising out of the trust are to be litigated in the federal and state courts sitting in Los Angeles.  But the Instrument of Appointment and Nomineeship Agreement, presuming they are valid, came later in time and thus would supersede the original forum-selection clause for these parties.  *San Diego Constr. Co. v. Mannix*, 175 Cal. 548, 550 (1917); *Frangipani v. Boecker*, 64 Cal. App. 4th 860, 863 (1998).

The parties hotly dispute whether the Instrument of Appointment and Nomineeship Agreement were validly executed and whether Respondents breached their obligations under those agreements.  But that issue bears little on the personal-jurisdiction discussion.  At best, Grasselle signed the agreements and consented to being sued in England, not California.  At worst, Grasselle never signed either agreement and still has no minimum contacts with California.  Either way, Moore can find no light at the end of the personal-jurisdiction tunnel.

Third, the agreements were performed entirely abroad.  Grasselle supposedly held the bank account—a Swiss account no less—in trust and provided, at least up to the time Moore alleges Grasselle stopped, accountings to Moore from either the British Virgin Islands or Switzerland.  In short, the evidence before the Court shows that California plays but a small role in this affair.

Fourth, despite Moore's repeated references to his presence in California, his unilateral activity is irrelevant in evaluating Grasselle's minimum contacts with California.  *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984).

The Court therefore finds that it lacks personal jurisdiction over Grasselle and **GRANTS** its Motion to Dismiss for Lack of Personal Jurisdiction.

    *ii.*    *Personal Jurisdiction over Egglishaw*

On one hand, Egglishaw argues that the Court similarly lacks personal jurisdiction over him because he conducts no business in California nor does he employ any agents here.  He also has not visited California since an unrelated trip in April 2005.  On the other hand, Moore contends that courts have jurisdiction over those who aid and abet the wrongful conduct of those within a court's jurisdiction.

Moore's arguments for personal jurisdiction over Egglishaw are even more attenuated than those regarding Grasselle.  Moore weaves a tangled web of ownership and ever-changing titles, attempting to link Egglishaw with Grasselle's alleged shirking of fiduciary duties.  Egglishaw, unlike Grasselle, is not even a signatory to

either of the purported agreements.  Nor is there any indication that Egglishaw has had any connection to the Golden State since April 2005, months before these agreements were supposedly executed.

Further, to the extent that Moore contends the Court has jurisdiction over Egglishaw for allegedly aiding and abetting Grasselle's supposed breach of fiduciary duties, this argument fails given the Court's finding that it lacks personal jurisdiction over Grasselle.

The Court finds that it lacks personal jurisdiction over Egglishaw and **GRANTS** his Motion to Dismiss on that ground.

    *iii.*    *Motion for Discovery Continuance*

Moore also asks the Court to grant him a 60-day continuance to conduct further jurisdiction-related discovery if it is inclined to grant Respondents' Motion.  While Moore did not choose to litigate in federal court, he did choose to bring the Petition against Respondents in Los Angeles, California.  He should have known he had to establish jurisdiction over both Grasselle and Egglishaw, whether in state or federal court.  The Court finds that any further discovery would be nothing more than an exercise in futility.  Moore's request is accordingly **DENIED**.

**C.**    **Venue**

Lastly, Grasselle and Egglishaw move to dismiss the First Amended Petition for improper venue under Rule 12(b)(3).  But since the Court finds that it lacks personal jurisdiction over either Respondent, the venue issue is irrelevant.

Therefore, the Court **DENIES AS MOOT** the Motion to Dismiss for Improper Venue.

## V.   CONCLUSION

For the reasons discussed above, Respondents' Motion to Dismiss for Improper Service of Process and Lack of Personal Jurisdiction is **GRANTED**.  Respondents' Motion to Dismiss for Improper Venue is **DENIED AS MOOT**.  This case is **DISMISSED WITHOUT PREJUDICE** as to Respondents Grasselle and Egglishaw.

1    The Court notes that Moore has not filed proof of service on Strachans or
2  otherwise updated the Court on the status of his case against Strachans.  Petitioner
3  Moore is hence **ORDERED TO SHOW CAUSE** by February 22, 2013, why this
4  case should not be dismissed for failure to serve Respondent Strachans.  The Court
5  will discharge this Order either by valid proof of service or a status report informing
6  the Court of Moore's diligent, good-faith efforts to effect proper service on Strachans.

8    **IT IS SO ORDERED.**

10    February 14, 2013

12    _____
13          **OTIS D. WRIGHT, II**
14      **UNITED STATES DISTRICT JUDGE**